IRVING, P.J.,
for the Court:
¶ 1. This appeal ensued after ¿Washington County jury convicted Tony Phillips of simple assault on a correctional officer. Phillips challenges the sufficiency Of the circuit court’s instructions to the jury and the completeness of its Batson[1] analysis.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Phillips, an inmate at the Washington County Regional Correctional Facility (WCRCF), was indicted for simple assault on a correctional officer after he attacked Officer Mose Harmon at the WCRCF.
¶ 4. During the jury-selection phase of Phillips’s trial, the State challenged four African American veniremembers, including a Ms. Hodo.[2] After that, Phillips raised á Batson objection, which the circuit court overruled after the State provided race-neutral explanations for its challenges.
¶ 5. Phillips testified in his own behalf and sought to establish that the assault on Harmon had been an act of self-defense. He later submitted Instruction D-8, a self-defense instruction, which the circuit court gave. Without an objection from Phillips, the circuit court also gave Instruction S-l, an elements instruction.
¶ 6. After the conclusion of the evidence, the- jury convicted Phillips. He timely filed a post-trial motion, which the circuit court denied. This appeal ensued.
DISCUSSION
' I. Jury instructions
¶ 7. The standard of review for a trial court’s ruling with respect to jury instructions is well established:
Jury instructions are generally within the discretion of the trial courtE,] and the settled, standard of review is abuse of discretion. The instructions are to be read together as a whole, with no on© instruction to be read alone or taken out of context. When read together, if the jury instructions fairly state the law of the-case and create no injustice, then no reversible error-will be found, i-.. [A] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the [trial] court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Bailey v. State, 78 So.3d 308, 315-16 (¶ 20) (Miss.2012) (internal citations and quotation marks omitted).
¶8. Phillips argues that Instructions S-l and D-8 failed to properly instruct the jury that the State bore the burden of proving that he did not act in self-defense. He also argues that in failing to so instruct the jury, the circuit court allowed the jury to believe that he bore the burden of proof. In response, the State argues that this issue is- procedurally barred. In the alternative, the State argues that (1) the jury was properly instructed on the elements of simple assault on a correctional officer, and (2) proof that the defendant was not acting in self-defense at the time of the offense, is not one of the elements. The State also argues that the jury was properly instructed as to the State’s burden of proof.
¶ 9. We agree with the State that this issue is procedurally barred because, during trial, Phillips failed to'object to Instructions S-l and D-8, and he failed to *1221 raise this issue in his post-trial motion. See King v. State, 857 Sq.2d 702, 720-27 (¶ 84) (Miss.2003). Acknowledging this failure, Phillips, citing Berry v. State, 728 So.2d 568 (Miss.1999), asks this Court to “address the issue as plain error because [a] procedural bar does not apply where ... the trial court adopt[ed] an instruction that did not fully instruct the jury on-the elements of the crime [charged].” However, as discussed below, Berry is inapplicable to the facts of this case.
¶ 10. In Berry, the defendant,- along with another individual, was indicted for the transfer of cocaine. Id. at 569 (¶ 1). During trial, without an objection from the defendant, the-trial court gave Instruction S-3, which purported to define accessory. The instruction provided:
[E]ach person present at the time, and consenting to and encouraging the'commission of á crime, and knowingly, will* fully[,3 and feloniously doing any act which is an element of the crime, or immediately connected with' it, or leading to its commission, is á principal. One who aids, assists[,] and encourages a transfer of cocaine is a principal and not an accessory, and his guilt in nowise depends upon the guilt or innocence, the conviction[,] or . acquittal of any other alleged participant in the crime. There.fore if you believe from the evidence, beyond a reasonable doubt, that [the defendant] did willfully, unlawfully[,] and feloniously do any .act which is an element of the crime of transfer of cocaine, as defined by the [c]ourt’s instructions, or immediately connected with it,, or leading to its commission, then and in that event, you should find [the-defendant] guilty of transfer of cocaine as charged in the indictment. :
Id. at 570 (¶ 4) (emphasis added); After a jury convicted her, the defendant appealed, arguing, among other things, that Instruction S-3 did “not require the jury to find that the crime was actually completed” and, therefore, “unconstitutionally relieve[d] the State of its burden to prove every element of the ‘crime beyond a reasonable doubt.” Id. at 571 (¶ 5). On appeal, the Mississippi Supreme Court noted that, “[o]rdinarily,‘[the] failure to object to a given instruction at trial results in a procedural bar on appeal, unless its granting amounts to -plain error.” Id. at (¶ 6). There, bur supreme court found that “the granting of Instruction S-3 amount[ed] to plain errorf] because the jury, was not fully .instructed on-the elements of the crime” of accessory and that-the failure of a trial court “to submit to the jury the -essential elements of the crime is fundamental error.” Id. The Berry court was clear that, although other instructions informed the jury of the elements of the crime and of the State’s burden of proof, the problem with Instruction 'S-3 was that it was “confusing and’ misleading” in that “it appeared] to give the jury an additional option of finding the defendant guilty if she committed' only one element of the crime without even finding that the crime was ever completed.” Id. at (¶ 9).
¶ 11. .Here, to convict Phillips of simple assault on a correctional officer, the State had to prove beyond a reasonable doubt that while Officer Háímon was acting within the scope of his duty as a law enforcement officer, Phillips
[ (1) ] attempted] to cause or purposely, knowingly[,] or recklessly eause[d] bodily injury to [Officer Harmon];
[ (2) ] negligently cause[d] bodily injury to [Officer Harmon] with a deadly weapon or other means -likely to- produce death or serious bodily harm; or
[(3)’] attempted] by physical menace . to put [Officer Harmon] in fear of imminent serious bodily harm.
*1222 Miss.Code. Ann. § 97-3-7(1)(a), (14) (Rev.2014).
¶ 12. Instruction S-l stated:
The [c]ourt instructs the jury that the defendant, _ Tony Phillips,, has been charged with the offense of simple assault upon a law enforcement officer. If you find from the evidence in this case beyond a reasonable doubt that:
1. Tony Phillips ... on or about Janu- .' ary 31, 2013, in Washington County [did];
2. Purposély, knowingly, and/or recklessly cause or attempt to cause bodily injury to Officer Mose Harmon;
3. By striking him;
4. Mose Harmon was a county jail correctional officer;
5. Mose Harmon was acting within the scope of his duty as a county jail correctional officer; and
6. Tony ■ Phillips knew Officer Mose . Harmon to be a county jail correctional officer;
■Then you shall find the defendant guilty ■as charged. -
If the prosecution failed to -prove any one or more of the above listed elements beyond a reasonable doubt, then you shall' find the defendant ] not guilty.
Instruction S-l properly set forth the elements of the crime of simple assault on a correctional officer, and it accurately informed the jury that if the State failed to prove those elements beyond a reasonable doubt, the jury had to find Phillips not guilty. Also, as seen in section 97-3-7, the State was not required to prove that Phillips’s assault of Officer Harmon was not an act of self-defense.
¶ 13. Instruction-D-8 provided:
The court instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to the defendant must be either actual, presentí,] and- urgent, or the defendant must have reasonable grounds to believe that the victim was the first aggressor or intended to assault him ... or to do him some bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury, find that the defendant acted in self-defense, then it is your sworn duty to return a verdict in favor of the defendant.
¶ 14. It is clear that Instruction S-l, unlike Instruction S-3 in Berry, is not misleading and confusing and informed the jury as to every element that the State had to prove before the jury could convict Phillips of simple assault on Officer Harmon. It provides no additional option that could have allowed the jury to convict Phillips even if the State had not proved all of the elements of the crime.
¶ 15. Instruction D-8 defined the law of self-defense and informed 'the jury that if it found that Phillips acted in self-defense in attacking Officer Harmon, then it was duly bound to return a verdict for Phillips. Because Instructions S-l and D-8 fulíy informed the jury as to the State’s burden of proof and Phillips’s theory of defense, we find that these instructions, along with other instructions given by the circuit court, adequately informed the jury of the law to be applied and did not shift to Phillips the State’s burden of proof as to any element. Therefore, this issue is both procedurally barred and without merit.
II. The Batson Analysis
¶ 16. Where error is assigned to a trial court’s ruling on a Batson challenge, an appellate court gives “great deference *1223 [to the trial court’s determinations] because they are largely based on credibility.” Puckett v. State, 788 So.2d 752, 756 (¶ 8) (Miss.2001) (citation b&itted). Appellate courts “will not reverse factual findings relating to á Batson -challenge unless they are clearly erroneous;” Id.
¶ 17. Phillips argues that the circuit court did not properly conduct its Batson analysis because it failed to consider whether the State’s race-neutral explanation for challenging Hodo was credible and non-pretextual. He insists that the court’s' failure to “determine whether the facially valid reasons were offered [a] as pretext for purposeful discrimination ... allowed the State to strike [Hodo] based-on-information from outside sources, the credibility of which-was left unchecked.” In response, the State points out that Phillips utilized peremptory challenges on African American veniremembers. Also, the State argues that the circuit court-did not err in overruling Phillips’s objection.
¶ 18. The basis of Phillips’s objection was that “the [State’sfirst] four [peremptory] strikes [were] all African[ ] Americans.” After he objected, the ‘ following colloquy took place:
[STATE]: In response, [Y]our Honor, the State would argue that there has not been a prima facie case for- a Batson challenge.
⅜ ⅜ ' ⅜
THE COURT: [ (To defense attorney) ] [It seems that your concern] is that [the State] -did not ‘utilize [its strikes] on any of the ... white jurors. •
[DEFENSE ATTORNEY]: In fact, [Y]our Honor, the S-l, the very first strike, was a black male,- which if you look at this entire panel, there are only a few black males, and a jury of Mr. Phillips’[s] peers would be inclusive of black males.
And so I am concerned that — if we have a jury panel with no black males, because Mr. Phillips is a black male.
THE COURT: All right. [The court] will ask the State to respond to that[.]
⅜ ⅜ $
[STATE]: [A]fter consulting' with our investigator on the first case, he informed us that Ms. Hodo has had bad interaction[s] with our office and also with law enforcement.
And based on that reason, the State struck her for her being nonrespon-sive for having family prosecuted or having bad interactions with our office and also for her not responding as being anti-law enforcement.
THE COURT: All right.
[DEFENSE ATTORNEY]: Just for the record, I certainly can’t say what knowledge [the State’s] investigator has on that. I- don’t know anything about that.
THE COURT: The [c]ourt can’t either. All right. So the [c]ourt finds that to . be race, gender, and religious neutral.
This concluded the circuit court’s Batson analysis.
¶ 19. In Randall v. State, 716 So.2d 584, 586 (¶9) (Miss.1998), the Mississippi Supreme Court outlined the Batson analysis, stating:
First, the opponent of the strike must make a prima facje showing that the proponent has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the proponent to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the opponent has carried his burden of proving purposeful discrimination.
*1224 ¶ 20. Phillips cites Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), as support for the proposition that “it [was] error [for the circuit court] to combine Batson’s second and third steps." According to' him, the circuit court erroneously ended its analysis “with a finding that the State had offered facially valid[,] race-neutral reasons [and] Med to undertake its duty to .,, determine whether the facially valid reasons were offered ás pretext for purposeful discrimination.” However, Phillips’s citation to Purkett is not helpful to his position. Although he is correct in his assertion that Purkett stands for the proposition-that a circuit court should move beyond the second Purkett -step to the third step and make a determination whether the facially race-neutral reasons given by the State for striking a juror were pretextual, Pm'kett does not support Phillips’s further conclusion that the circuit court’s failure to move to 'the third step and make an on-the-record finding that the reasons given were not pretextual requires that his conviction be reversed.- As we demonstrate in the discussion that follows, the burden is always on the opponent of a strike alleged to be impermissible under Batson to show that the strike violates Batson’s principles.
¶ 21. In Purkett, the defendant objected to the prosecution’s use of peremptory challenges on two African American veniremembers. Id. at 766, 115 S.Ct. 1769. After that, the prosecútion explained that it had challenged one venire-member because of his long, unkempt hair and the other veniremember because he was the victim of a robbery. Id. The trial court overruled the defendant’s objection without providing a specific reason. Id, On direct appeal, the Missouri Court of Appeals affirmed, “finding that the state’s explanation constituted a legitimate hunch and that the circumstances failed to raise the necessary inference of racial discrimination.” Id. (citation and internal quotation marks omitted). After the/defendant filed a petition for habeas corpus in the United States District Court for the Eastern District of Missouri, the district court also affirmed. Id. at 767, 115 S.Ct. 1769. The Court of Appeals for the Eighth Circuit reversed and remanded, finding:
Where the prosecution strikes a prospective juror who is a member of the defendant’s racial group, solely on the basis of factors which are facially irrelevant to the question of whether that person is qualified to serve as a juror in the particular case, the prosecution must at least articulate some plausible race-neutral reason for believing those factors will somehow affect the person’s ability to perform his or her. duties as a juror. In the present case, the prosecutor’s [explanations of] “I don’t like the way [the juror] looks[because] the way [his] .hair is- cut[,] ... [his] mustache!,] and [his] beard look suspicious to me” do not constitute such legitimate race-neutral reasons for [the first juror]. [Thus,] the prosecution’s explanation for striking [him] was pretextual, and ... the state trial court .., clearly erred in finding that striking [the] juror ... had not been intentional discrimination.
Id. Therefore, the Eighth Circuit would have required the lower court to. determine under the second prong of the analysis whether the race-neutral explanation was pretextual.
¶22. After granting certiorari, the Supreme Court reversed the Eight Circuit’s judgment, holding that the second prong of the Batson analysis
does not demand an. explanation that is persuasive, or even plausible. [Under] th[e] second [prong] of the [analysis], the issue is the facial validity of the prosecutor’s explanation. Unless a dis *1225 criminatory intent is inherent in ,the prosecutor’s explanation, the reason offered will be deemed race neutral,
Id. at 768, 115 S.Ct. 1769 (citation omitted). While the Supreme Court found that a trial judge should move to, the third phase of the analysis after the prosecutor has given - a race-neutral reason for a strike, that is, to a determination as to whether the race-neutral reason given by the prosecutor is pretextual, it is clear that in the absence of any credibility issues with the race-neutral reasons given or additional evidence from the opponent of the strike demonstrating the falseness of the reasons given, the trial judge does not err in ultimately allowing the strike. This is shown by the Supreme Court’s statement that
[I]t is not until the third step' that the persuasiveness of the justification becomes relevant — the step' in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination, But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step three is quite different from saying that a trial judge must terminate the inquiry at step two when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate, burden of persuasion regarding racial' motivation rests with, and never shifts from, the opponent of the strike.

Id.

¶ 23. As noted, the State’s explanation for challenging Hodo was that she had “bad interactions” with the- district attorney’s office. The record reveals that Phillips did not refute that explanation and did not . name non-African-American veniremembers who had “bad-interactions” with the district attorney’s office but who were not challenged by the State. Pruitt v. State, 986 So.2d 940, 944 (¶ 16) (Miss.2008) (citation omitted), (finding that indi-cia of pretext include “disparate treatment, that is, the présenee of unchallenged jurors of the opposite race -who share the characteristic given, as the basis for the challenge”). And the circuit court' clearly found the State’s explanation to be non-pretextual, as evidenced by the fact that the court allowed the prosecutor’s strike of Hodo to stand. This issue is without merit.
¶ 24. As to Phillips’s argument that the circuit court erroneously struck Hodo based upon an explanation derived from unreliable outside sources, it is sufficient to say that Phillips did not provide any evidence to support this assertion. We have already quoted his counsel’s precise response after the State gave its race-neutral reason for the strike, so there is no need to repeat it here. But a review of that response makes it clear that Phillips did not produce any evidence suggesting that the State’s investigator was unworthy of belief.. .The State,,was only required to provide - a; race-neutral explanation that was nondiscriminatory, and the State’s explanation — that Hodo, had “bad interactions” with the district attorney’s office — is both race neutral and. nondiscriminatory. Puckett, 788 So.2d at 758 (¶ 14) (citation omitted) (finding that “[t]he second step of [the Batson analysis] does not demand an explanation that is persuasive[] or even plausible”). This issue is without merit. Accordingly, we affirm.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF SIMPLE ASSAULT ON A CORRECTIONAL OFFICER AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE *1226 MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $500 TO THE CRIME VICTIMS’ COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, CJ.,'GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. The record does not inform us of.Hodo’s first name.